DORLIS F. SUTTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sutton v. Commissioner
Docket No. 19822-81.
United States Tax Court
T.C. Memo 1983-562; 1983 Tax Ct. Memo LEXIS 233; 46 T.C.M. (CCH) 1371; T.C.M. (RIA) 83562; September 12, 1983. Dorlis F. Sutton, pro se. Robert J. Foley, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency of $1,595 in petitioner's Federal income tax for 1978. The sole issue for decision is whether the new principal residence credit claimed by petitioner on her 1975 return must be recaptured in 1978. This depends on whether the replacement residence purchased by petitioner was a "new principal residence" within the meaning of section 44(d)(2) of the Code. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this *235 reference. Dorlis F. Sutton (petitioner) resided in Millbrae, California, when she filed the petition in this case. Petitioner timely filed an individual Federal income tax return, Form 1040, for the 1978 taxable year with the Director, Internal Revenue Service Center, Fresno, California. On her 1975 Federal income tax return, petitioner had claimed a new principal residence credit of $1,595 for the purchase of a residence at 2395 Oak Crest Drive South, Palm Springs, California. The Oak Crest Drive residence, purchased in April 1975, was a new principal residence within the meaning of section 44(c)(1). Petitioner sold the Oak Crest Drive residence on May 3, 1977. On July 19, 1977, petitioner purchased a residence located at 1207 Calle De Maria, Palm Springs, California. The building permit for the construction of the Calle De Maria residence had been issued by the City of Palm Springs, California on July 14, 1959. The permit listed Mr. and Mrs. Theodore Sutter as the owner of the lot. The home itself was built sometime after 1959. The Sutters maintained their principal residence at 356 South Rimpaw, Beverly Hills, California, and used the Calle De Maria residence only *236 as a weekend vacation residence prior to its purchase by petitioner. On April 27, 1981, the Commissioner issued a statutory notice of deficiency to petitioner for the 1978 taxable year. In his notice, respondent determined that since petitioner had disposed of the residence for which she claimed the principal residence credit within the proscribed 36-month period and had failed to replace it with another qualified residence under section 44, petitioner must recapture the amount of the credit taken in 1975. The parties have stipulated that if the recapture provisions are applicable, then 1978 is the proper year for such recapture to occur. OPINION Section 44(a) provides that: In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer. (Emphasis added.) For purposes of section 44, the term "new principal residence" is defined in section 44(c)(1) as follows: The term "new principal residence" means a principal residence (within the meaning of section 1034), the original use of which *237 commences with the taxpayer, and includes, without being limited to, a single family structure, a residential unit in a condominium or cooperative housing project, and a mobile home. (Emphasis added.) For purposes of section 44 and the regulations thereunder, the same definition of "new principal residence" is found in section 1.44-5(a), Income Tax Regs.[2] This regulation further specifies that "original use" means that "such residence has never been used as a residence prior to its use as such by the taxpayer." *238 The parties agree that petitioner properly claimed and was allowed a new principal residence credit for 1975 in connection with her purchase of the Oak Crest Drive residence. Section 44(a). However, petitioner sold this residence less than 36 months from the date of her purchase. Therefore, section 44(d)(1) [3] requires petitioner to recapture the full amount of the credit, unless she comes within one of the statutory exceptions set out in either paragraph (2) or (3) of section 44(d). [4]
*239 Petitioner contends that her purchase of the Calle De Maria property on July 19, 1977, satisfies the requirements of section 44(d)(2), exempting her from the recapture provision. In pertinent part, section 44(d)(2) provides that: If, in connection with a disposition described in paragraph (1) and within the applicable period prescribed in section 1034, the taxpayer purchases or constructs a new principal residence, then the provisions of paragraph (1) shall not apply * * *. (Emphasis added.) Section 44(d)(2) thus allows the seller 18 months from the disposition of the old residence to either construct or purchase a new principal residence, thereby avoiding recapture.
In essence, petitioner's primary argument seems to be that the requirements of section 44(d)(2) are met merely by purchasing another "principal residence" within the statutorily prescribed replacement period. Petitioner places heavy reliance on section 44(c)(1)'s parenthetical reference to section 1034, contending that the term "new principal residence" must be defined with respect to that section and the regulations promulgated thereunder. Also petitioner seems to argue that since the prior owners of the *240 replacement residence had used the house only as a vacation home and not as their principal residence, she was therefore the first person to use the house as a principal residence, hence the "original use" of the house as a principal residence commenced with her within the meaning of section 44(c)(1) and the regulations. Respondent, on the other hand, asserts that not only must petitioner purchase another principal residence within the statutorily prescribed replacement period, but that such replacement residence must also meet the definition of "new principal residence" found in section 44(c)(1). Thus, since the Calle De Maria property had been used for residential purposes by the Sutters prior to petitioner's purchase, the statutory definition of "new principal residence" is not satisfied, and the previously claimed credit must be recaptured. We agree with respondent. Both sections 44(a) and 44(d)(2), the former providing for the credit in the first instance and the latter providing for an exception to recapture following a premature disposition, expressly require the presence of a "new principal residence." The term "new principal residence" is specifically defined in section *241 44(c)(1). Furthermore, the introductory clause of section 44(c) clearly provides that this special definition is to apply anytime the term "new principal residence" is utilized in section 44. Thus, petitioner's reliance on the parenthetical reference to section 1034 in defining "new principal residence" for purposes of the section 44(d)(2) exception to recapture is misplaced. A close reading indicates that section 44(c)(1) refers to section 1034 only for the meaning of "principal residence." This cross-reference looks primarily to the factual question of what is a residence, whether the taxpayer used the residence in question as his principal place of abode, the time frame and the related non-recognition of income. The meaning of "new principal residence," however, is strictly a concept of the section 44(c)(1) definition. This distinction is also carried over in section 1.44-5(a), Income Tax Regs., where "new principal residence" is defined in terms of a principal residence "the original use of which commences with the taxpayer," "principal residence" is defined in terms of the meaning under section 1034, and "residence" is defined in terms of types of structures. See footnote *242 2. In order to constitute a "new principal residence" within the meaning of section 44(c), the property in question must be a "principal residence,… the original use of which commences with the taxpayer." It is clear that the concept of "original use" utilized by the statute and the regulations thereunder refers to the original use of the property as a residence.Gundersheim v. Commissioner,74 T.C. 573, 576-577; section 1.44-5(a), Income Tax Regs.[6] "Of course, if the property had been previously used as a residence, then its purchase and occupancy by a taxpayer would not constitute original use." Gundersheim,supra at 577. In light of the foregoing, it is clear that petitioner is not entitled to avoid recapture of the credit allowed in 1975. It is undisputed that the Calle De Maria property was used by the Sutters for residential purposes prior to petitioner's purchase of such property. The Sutters' use of the Calle De Maria *243 property only as a weekend vacation residence does not change this result.Any prior residential use of such property is sufficient to prevent petitioner from satisfying the requirement that the original use of such property as a residence begin with her. Petitioner makes the rather novel suggestion that the original use as a principal residence began with her since the Sutters did not use the house as their principal residence but as a vacation home. This suggestion would add to the statutory definition of "new principal residence" the following underscored language that is not found in section 44(c)(1), namely: "The term 'new principal residence' means a principal residence (within the meaning of section 1034), the original use of which as a principal residence commences with the taxpayer…." Similarly petitioner would add to the regulation defining "original use" (sec. 1.44-5(a), Income Tax Regs.) the following underscored language so that it would read: "such residence has never been used as a principal residence prior to its use as such by the taxpayer." Whatever justification one might find in logic or syntax to support petitioner's interpretation, such a reading *244 of the statute or the regulation is wholly inconsistent with and thwarts the narrow legislative purpose of the new principal residence tax credit. Section 44 was narrowly focused on the existing inventory of new but unsold houses. The legislative history indicates that the credit was designed to aid the sale of these "new" additions to the nation's housing stock to reduce the glut of new housing then in existence. To allow petitioner to avoid the recapture provisions of section 44 by the purchase of a "used" house would defeat that purpose. For a thorough analysis of this legislative history of section 44, see Dobin v. Commissioner,73 T.C. 1121, 1124-1126 (1980). In conclusion, not only is recapture of the previously claimed credit mandated in this case by the express terms of the statute, but it is also in keeping with the congressional purpose behind the enactment of the "new principal residence" credit. For the reasons stated herein, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Section 1.44-5(a), Income Tax Regs., provides, in pertinent part: (a) New principal residence.↩ The term "new principal residence" means a principal residence, the original use of which commences with the taxpayer. The term "principal residence" has the same meaning as under section 1034 of the Code. For this purpose, the term "residence" includes, without being limited to, a single family structure, a residential unit in a condominium or cooperative housing project, a townhouse, and a factory-made home. * * * "Original use" of the new principal residence by the taxpayer means that such residence has never been used as a residence prior to its use as such by the taxpayer. For this purpose, a residence will qualify if the first occupancy was by the taxpayer pursuant to a lease arrangement pending settlement under a binding contract to purchase or pursuant to a lease arrangement where a written option to purchase the then existing residence was contained in the original lease agreement.
3. Section 44(d)(1) provides that: Except as provided in paragraphs (2) and (3),↩ if the taxpayer disposes of property with respect to the purchase of which a credit was allowed under subsection (a) at any time within 36 months after the date on which he acquired it (or, in the case of construction by the taxpayer, on the day on which he first occupied it) as his principal residence, then the tax imposed under this chapter for the taxable year in which terminates the replacement period under paragraph (2) with respect to the disposition is increased by an amount equal to the amount allowed as a credit for the purchase of such property. (Emphasis added.) 4. Section 44(d)(2) provides that: If, in connection with a disposition described in paragraph (1) and within the applicable period prescribed in section 1034, the taxpayer purchases or constructs a new principal residence, then the provisions of paragraph (1) shall not apply and the tax imposed by this chapter for the taxable year following the taxable year during which disposition occurs is increased by an amount which bears the same ratio to the amount allowed as a credit for the purchase of the old residence as (A) the adjusted sales price of the old residence (within the meaning of section 1034), reduced (but not below zero) by the taxpayer's cost of purchasing the new residence (within the meaning of such section) bears to (B) the adjusted sales price of the old residence.↩
6. See also Hames v. Commissioner,T.C. Memo. 1983-532; Nankivil v. Commissioner,T.C. Memo. 1982-722; Lonergan v. Commissioner,T.C. Memo. 1982-346↩.